CHICAGO INVESTMENT CORP., Plaintiff-Appellant, *v.* LOUIS DOLINS *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 80-861

Opinion filed March 3, 1981.—Rehearing denied March 31, 1981.

Jay Erens, William E. Rattner, and James M. Lawniczak, and Abramson & Fox, all of Chicago (Levy and Erens, of counsel), for appellant.

Warren E. King and Jesse H. Brown, both of Chicago, for appellees.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff Chicago Investment Corporation (CIC) brought this action for specific performance as assignee of a purported real estate sales contract made between its assignor, James F. Graves (Graves) and defendants Louis and Max Dolins (the Dolins). The Dolins filed a motion to strike the complaint and dismiss the suit, alleging among other things that there was no enforceable contract in existence. The trial court granted the motion and later denied CIC's motion for rehearing or for filing an amended complaint.

On appeal, CIC asks us to determine (1) whether the original complaint alleged the existence of a valid contract and thus stated a cause of action, and (2) whether the trial court erred in refusing to allow CIC to file an amended complaint.

CIC is the assignee of James F. Graves. Graves negotiated with the Dolins for the purchase of five Chicago hotel properties. On July 18, 1979, Graves and the Dolins executed a document which is purported by CIC to be an enforceable contract for the sale of the subject properties.

This document was appended to the complaint. For the sake of lending clarity to this opinion, we set out some of its relevant terms. The document consists of three typewritten pages, upon which are some cross-outs and handwritten substitutions. All of these alterations are

initialed "J.G.," with the exception of the caption of the entire document. That caption is handwritten, and states "Letter of Intent."

The parties to the document are clearly spelled out: the Dolins, individually and as agents for the shareholders of the corporations holding beneficial trust interest in the subject properties, and James F. Graves. The document states that these parties "hereby express their understanding regarding the purchase and sale of "five parcels of real estate. The parcels are identified by what are apparently their business names, as well as by their street addresses. No legal description appears in the purported contract.

The purchase price for the entire transaction is specifically stated. It is further broken down into the specific payment terms: amount to be tendered at closing, amount of purchase money mortgage, interest rate of that mortgage, and length of that mortgage. Also found in the document is a clause concerning release prices for each property. This clause lists each property, but contains a blank following a property name wherein the release price was to be inserted. Also left blank is the allocation of the total purchase price of the deal between the five parcels.

A further clause specifies the amount of earnest money Graves is to deposit, and also states the name of the escrow agent who is to hold that money.

Of greatest significance to the resolution of this appeal is the language found in some of the remaining clauses of the document. Clause F states that "[t]he final contract shall be in form and substance acceptable to attorneys for the Seller and Buyer." Clause G states that "Buyers will assume all executory contracts attached as a schedule in the contract ° ° °." No such schedule was attached to the document appended to the complaint. Clause I states that "[i]mmediately upon execution of contract contemplated herein ° ° °," the seller would take certain action regarding a business occupying space at one site.

On September 20, 1979, Graves assigned his interest to CIC. Seven days later, an attorney for the Dolins stated in a letter to attorneys for CIC that the subject properties were being offered to other parties, and that no agreement for sale to Graves or CIC existed.

CIC then filed a complaint for specific performance of the purported contract. The complaint was amended (first amended complaint) to include legal descriptions of the subject properties.

The Dolins responded by filing a motion to strike the complaint and dismiss the action. The trial court granted the Dolins' motion, finding that the purported contract was not complete. The court's order noted the presence of blank spaces in two locations on the document, and also referred to the language which seemed to concern a later document to be executed and to serve as the actual contract for sale.

CIC moved for rehearing or for permission to amend the first amended complaint with another complain (second amended complaint). The trial court denied this motion, and CIC appealed.

## I.

CIC contends that the trial court erred in dismissing the one-count first amended complaint. It argues that that complaint alleged a valid contract to sell realty, and therefore stated a valid cause of action.

■■ In order to state a cause of action for specific performance of a contract, it is necessary that an enforceable contract exist. The contract's operative terms must be of sufficient clarity so that the court can require the performance of the specific thing for which the parties to it contracted. It is not, however, necessary to provide for every collateral matter or every future contingency. A writing is sufficient if it allows the court to ascertain the agreement of the parties. (*Morey v. Hoffman* (1957), 12 Ill. 2d 125, 130-31, 145 N.E.2d 644.) Terms setting forth the manner and method of payments are essential. Also required is a description of the property, as well as the price, terms, and conditions of the sale. *Cefalu v. Breznik* (1958), 15 Ill. 2d 168, 170, 154 N.E.2d 237.

■■ In determining whether a document which is alleged to be a contract within the above rules is such an enforceable agreement, the court must determine the intent of the parties to the document. The determination of the intent of the parties may be a question of law or a question of fact, depending on the language of the document. If the language therein is unambiguous, the construction of the purported contract is a question of law. If the language is ambiguous, on the other hand, the determination of its meaning is a question of fact. In Illinois, the trial court must decide whether a document's language is ambiguous or not, since that decision itself is a matter of law. *Interway, Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 1098, 407 N.E.2d 615.

■■ If the court should find that the document's language is ambiguous, and thus that construction of its meaning is a question of fact, it is improper to utilize a section 45 motion (Ill. Rev. Stat. 1979, ch. 110, par. 45) to resolve the matter. Conversely, if the court should find that the document's language is unambiguous, and thus that construction of its meaning is a question of law, the trial court may resolve the issue pursuant to a section 45 motion. (*Interway, Inc. v. Alagna*, at 1098.) This is because the trial court may take parol evidence to explain the intent of the parties in the former situation. (*Borg-Warner Corp. v. Anchor Coupling Co.* (1958), 16 Ill. 2d 234, 241, 156 N.E.2d 513.) In the latter situation, the intent of the parties is clear from the document's four corners, and the question of whether a contract cause of action may arise therefrom is immediately

answerable. Here, the motion filed by the Dolins, although not so entitled, must be viewed as a section 45 motion. The trial court examined the purported contract in light of this motion, and dismissed the action. For this decision to have been proper, in light of the above rules, it was essential that the alleged contract unambiguously indicated that it was in reality not a contract, but rather some lesser undertaking by the parties which was a precursor to a valid and enforceable agreement.

■■ ■ In reviewing a section 45 dismissal, this court should interpret the facts alleged in the complaint in a light most favorable to the plaintiff. A complaint should not be dismissed under section 45 unless the pleadings disclose that no set of facts which could be proved would entitle the plaintiff to relief. *Interway, Inc. v. Alagna*, at 1097.

■■ In our opinion, it cannot be said that the terms of the purported contract unambiguously indicate that the parties did *not* intend to be bound by the document. It is true that several clauses in the writing refer to "the final contract" or "execution of contract contemplated herein." However, the fact that the parties contemplate that a formal agreement will eventually be executed does not necessarily render prior agreements "mere negotiations." (*Interway, Inc. v. Alagna.*) Once the Statute of Frauds has been overcome, as here, parties may have entered into a binding and enforceable contract though no *formal* contract was signed or delivered, so long as all the essential terms have been agreed upon. Conversely, where the intent of the parties is clear that they will not be legally bound until execution and delivery of a formal agreement, no contract comes into existence until that time. *Chicago Title & Trust Co. v. Ceco Corp.* (1980), 92 Ill. App. 3d 58, 69.

■■ Here, the alleged contract contains a description of the subject properties (albeit not their legal descriptions), the total price, the earnest money amount, the escrow agent, the remaining terms of payment, and other terms. In light of the presence of these elements, we cannot agree with the trial court that this document unambiguously demonstrates that the parties to it did not intend to be bound thereby, and that it is thus not a contract as a matter of law. CIC places great emphasis on the label "Letter of Intent." In *Interway*, we reviewed the law with respect to a "Letter of Intent." It is not necessary to repeat the identical review. Suffice it to say that the label is only one element to be considered along with the substance of the document. Because of the patent ambiguity of the document, it was error for the trial court to have utilized a section 45 ruling to decide the merits of the case. The trial court should have denied the Dolins' motion and taken parol evidence in order to ascertain whether the parties did intend to be bound by the document executed on July 18, 1979. We reverse and remand the case to that court for those purposes.

976

## II.

CIC asserts that the trial court erred in denying its motion for leave to amend the complaint.

In light of our determination above, resolution of this issue is unnecessary. Upon receipt of parol evidence, should the trial court decide that no contract was intended by the document, CIC would have no cause of action for breach thereof. On the other hand, if the court finds that an agreement was reached and that the parties intended to be bound, it can rule on the merits of the complaint.

For these reasons, we reverse the decision of the circuit court and remand the cause for proceedings consistent with this opinion.

Reversed and remanded.

STAMOS and PERLIN, JJ., concur.