HANS EVERS, Plaintiff-Appellant, v. EDWARD HOSPITAL ASSOCIA-
TION, d/b/a Edward Hospital, *et al.*, Defendants-Appellees.

Second District   No. 2—92—1204

Opinion filed July 9, 1993.—Rehearing denied August 20, 1993.

Martin B. Lowery, of Naperville, for appellant.

Laura R. Keidan and Michael R. Callahan, both of Katten, Muchin & Zavis, of Chicago (Lawrence H. Lenz, Jr., of counsel) for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Hans Evers, M.D., appeals from a circuit court of Du Page county judgment which dismissed his complaint in its entirety and denied his motion for sanctions. Defendants are the Edward Hospital Association (EHA); EHA's board of directors (Board); EHA's president and chief executive officer, Pamela K. Meyer (Meyer); and the Edward Hospital District (EHD), a municipal corporation (collectively defendants). For convenience, we will use "hospital" to refer to EHA, Meyer or other EHA officials when the individual identity of the actor is immaterial.

The suit arose after: (1) the hospital declined to evaluate plaintiff's application for medical staff membership because the hospital deemed the application incomplete; (2) the hospital determined that plaintiff was not entitled to any hearings or appellate review on the matter; and (3) the hospital denied plaintiff's request for a copy of the credentials file related to plaintiff's application.

On appeal, plaintiff contends that: (1) the trial court erred in dismissing his complaint; (2) the trial court erred in staying portions of plaintiff's discovery requests; and (3) the trial court erred in ruling that plaintiff's motion for sanctions was moot. We will consider plaintiff's additional contentions regarding property or liberty interests and dissemination of information in the credentials file in conjunction with the foregoing contentions.

The facts, as gleaned from the pleadings, are as follows. Plaintiff, a physician duly licensed to practice medicine in the State of Illinois, applied for appointment to the hospital medical staff by letter and attachments, including an application form, dated February 1, 1990. Plaintiff practices medicine in Naperville. Edward Hospital is located in Naperville and is the only hospital in Naperville.

The application form which plaintiff submitted indicated that as part of the application process the hospital would have to evaluate plaintiff's professional competence and other qualifications. The application form also provided:

"It will be necessary to investigate my professional training, experience, and professional conduct and judgment; accordingly, it will be necessary to inquire of other persons and institutions, including medical schools, hospitals, medical societies, professional liability insurance carriers, individual practitioners,

and other appropriate sources, as to information regarding my qualifications. *** I recognize that all evaluations, inquiries and responses to inquiries regarding my professional competence and qualifications shall be carried out in a professional and ethical manner, with due regard for appropriate confidentiality of the information in issue.

I also recognize that I will be afforded the fair procedure prescribed in the Medical Staff Bylaws in the event that action on this application, or with respect to my privileges is adverse. **Recognizing these facts, I specifically agree and consent to the following:**

a) To appear, if requested, before the hospital president, medical staff officers, department and service chiefs, and medical staff committees for interviews or inquiries regarding this application;

b) To assist, in every way possible, this medical staff and its representatives, in gathering the information necessary to determine my qualifications. In this regard, I recognize that I have the burden of producing adequate information for proper evaluation of my professional competence, character, ethics and other qualifications and for resolving any doubts about such qualifications;

c) To the dissemination of information (including all medical staff and medical records) pertaining to my professional qualifications among this hospital and its medical staff and other persons, hospitals, medical staffs, professional societies, training programs, professional associations, professional liability insurance companies, and licensing authorities in jurisdictions in which I have trained, resided, or practiced, for the present and continuing evaluation of my professional training experience, character, conduct and judgment;

d) I hereby further consent to the inspection by Edward Hospital and their representatives of all records and documents, including medical/dental/podiatric/professional records, at other hospitals or institutions that may be material to an evaluation of my professional qualifications and competence to carry out the clinical privileges requested, as well as my moral and ethical qualifications for staff membership;

e) To be bound by the terms of the Medical Staff and Hospital Bylaws in all matters relating to the consideration of this application, regardless of whether I am granted medical staff membership and the privileges sought. In this regard, I ac-

knowledge that I have received and have had the opportunity to review the Medical Staff Bylaws, Rules and Regulations, and any Hospital Bylaws and/or rules and policies which may pertain."

Article VI, section 1, of the medical staff bylaws (Bylaws) provides:

"b. The applicant shall have the burden of producing adequate information for a proper evaluation of his experience, background, training, demonstrated ability, competence, character, ethics, and, upon request of the Credentials or Executive Committee or the Board of Directors, physical and/or mental health status, or any other qualifications, and for resolving any doubts about such qualifications.

c. The completed application shall be submitted to the Chief Executive Officer or the Manager of Medical Services. After collecting the references and other materials deemed pertinent, the application and supporting materials will be transmitted to the appropriate clinical department for review and evaluation. The department chairman will then transmit the application and recommendations regarding acceptance and clinical privileges to be granted to the Credentials Committee for evaluation."

As part of the application process, plaintiff also signed a separate release form which provided, in part: "I also release from any liability all individuals and organizations who provide information to the hospital in good faith and without malice concerning my competence, ethics, character and other qualifications."

By letter dated June 26, 1990, the hospital advised plaintiff that his application had been tabled at the credentials committee level. The letter stated that plaintiff would have to provide the hospital with information regarding his placement on probation while in his neurology residency at Loyola Hospital (Loyola), his reasons for leaving the Loyola residency after two years, and whether his change to another facility was voluntary or involuntary.

Plaintiff responded by letter which explained that plaintiff had been placed on probation twice during his neurology residency at Loyola and that many, if not most, of his fellow residents shared the status of probation with him during their residencies. Plaintiff's letter also stated that he left Loyola voluntarily because of the behavior of the Loyola neurology chairman toward him.

A series of letters between plaintiff and the hospital ensued. The hospital sought additional information regarding the circumstances of

plaintiff's probation while at Loyola. Plaintiff responded that he could not truthfully state what prompted the Loyola neurology chairman to impose the two probation periods (which plaintiff stated each lasted for one month). The hospital was unsuccessful in obtaining information from Loyola about the probation periods because the neurology chairman would not release the information unless plaintiff signed an unconditional release providing immunity from all liability to Loyola and its employees without restrictions. The hospital requested plaintiff to sign such a release. Plaintiff protested the additional release on the grounds it abolished the standard of "good faith and without malice" and was contrary to the spirit of the standard in the Bylaws. The hospital determined it needed the information and it was plaintiff's responsibility to provide it. Plaintiff contended that the hospital had sufficient information to complete its evaluation and that the release he had signed under the good-faith-and-without-malice standard was sufficient and all that should be required. The hospital concluded that it could not adequately evaluate plaintiff without the probation information; that the Bylaws did not limit the hospital to a good-faith-and-without-malice standard for releases; and that unless plaintiff signed the additional release his application would be considered voluntarily withdrawn. Plaintiff did not sign the unconditional release and did not provide any other information about the probations.

By letter dated February 27, 1991, Meyer advised plaintiff that the Board had accepted a recommendation that plaintiff's application not be approved. The letter stated that the Board's action was based on the "incomplete status" of plaintiff's application.

The hospital denied plaintiff's subsequent request for hearings and appellate review under the Bylaws. The hospital also denied plaintiff's request for a copy of the credentials file related to his application on the grounds the information was privileged and confidential under the Medical Studies Act (Ill. Rev. Stat. 1991, ch. 110, par. 8—2101 *et seq.*).

Plaintiff subsequently filed a three-count complaint. Count I, a suit in equity, sought specific performance of a purported contract between plaintiff and EHA requiring EHA to evaluate plaintiff's application. Count II sought judicial review of: (1) the action of EHA and its Board not to approve plaintiff's application for medical staff membership; (2) defendants' refusal to furnish plaintiff with a copy of the credentials file; (3) defendants' refusal to afford plaintiff a hearing; and (4) Meyer's actions during a meeting. Count III claimed that defendants deprived plaintiff of his due process rights under the United States Constitution and 42 U.S.C. §1983 (1988).

On March 30, 1992, defendants filed a motion to dismiss the complaint pursuant to sections 2—615 and 2—619 of the Illinois Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, par. 1—101 *et seq.*) and a motion to stay discovery. The court's order on that date, ruling on these motions, stayed all discovery except as to matters pertaining to whether State action was present; whether the hospital was a public or private hospital; and the interrelationship between EHA and EHD.

After concluding that Meyer, who had executed an affidavit of compliance with discovery, knew or reasonably should have known of certain documents which defendants did not produce during discovery, plaintiff filed a motion for sanctions. The alleged documents purportedly related to the limited discovery matters permitted by the trial court.

On September 14, 1992, the trial court entered an order granting defendants' motion to dismiss pursuant to section 2—615 (Ill. Rev. Stat. 1991, ch. 110, par. 2—615). The order dismissed plaintiff's complaint in its entirety and denied plaintiff's motion for sanctions on the ground it was moot. Plaintiff appealed from the trial court order.

The first issue on appeal is whether the trial court erred when it dismissed plaintiff's complaint in its entirety pursuant to section 2—615. At the hearing on the motion to dismiss, the trial judge stated that plaintiff's complaint "taken as a whole does not set forth a cause of action under any recognizable theory." The court determined that the issue of whether the hospital was public or private was not dispositive and assumed, for the purposes of its ruling, that the hospital was a public hospital and "as such, would be subject to the constitutional provisions regarding State actions."

The court concluded that the pleadings clearly showed that the hospital did not reject plaintiff's application, and that the hospital "declined to consider the application because it was incomplete." Based on that conclusion, the court stated that even if the hospital was a public hospital its "declination to consider the application" did not give rise to "the considerations of any property or liberty interests" because the application was in plaintiff's exclusive control and it was his obligation to complete the application before it had to be considered by the hospital. The trial court specifically stated that the complaint was dismissed pursuant to section 2—615 and not section 2—619.

Among the principles governing a motion to dismiss pursuant to section 2—615 (Ill. Rev. Stat. 1991, ch. 110, par. 2—615) are the following. A section 2—615 motion to dismiss attacks only the legal suf-

ficiency of the complaint and therefore does not raise affirmative factual defenses (as does a section 2—619 motion), but rather alleges defects on the face of the complaint. (*Urbaitus v. Commonwealth Edison* (1991), 143 Ill. 2d 458, 475.) The question presented by a section 2—615 motion to dismiss is whether sufficient facts are contained in the pleadings which, if proved, would entitle the plaintiff to relief. (*Kolegas v. Heftel Broadcasting Corp.* (1992), 154 Ill. 2d 1, 9.) In making this determination, the court is to interpret the allegations of the complaint in the light most favorable to the plaintiff. *Kolegas*, 154 Ill. 2d at 9.

The only matters to be considered in ruling on a section 2—615 motion to dismiss are the allegations of the pleadings themselves. (*Urbaitus*, 143 Ill. 2d at 475.) Exhibits attached to the pleadings are considered part of the pleadings for all purposes where the pleading is founded on such exhibits. (Ill. Rev. Stat. 1991, ch. 110, par. 2—606.) Allegations in the pleadings which conflict with facts disclosed in the exhibits are not admitted as true but, rather, the exhibit controls. (*In re Estate of Davis* (1992), 225 Ill. App. 3d 998, 1000.) The granting of a motion to dismiss a complaint is within the sound discretion of the trial court. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 422.) We will apply these principles to plaintiff's complaint to determine whether the trial court erred in dismissing the complaint.

Count I of plaintiff's complaint sought specific performance of an alleged contract. Count I alleged that by sending plaintiff the form to apply for medical staff privileges the hospital offered to consider fairly and evaluate plaintiff's application in accordance with the relevant Bylaws. Count I alleged that plaintiff accepted the hospital's offer by paying the application fee and agreeing to be bound by the Bylaws in all matters relating to the application. Count I alleged that plaintiff fulfilled his obligations under the contract including meeting the contract conditions of agreeing to release from liability any and all individuals and/or organizations providing information to the hospital pursuant to the application process. Count I alleged that plaintiff actually executed a release as required by the Bylaws, *i.e.*, releasing the information provider from liability as long as the information was provided in good faith and without malice.

Count I further alleged that the hospital breached the contract when it refused to consider plaintiff's application unless plaintiff executed an unconditional release in favor of Loyola Hospital and the chairman of its neurology department. The complaint alleged that this conduct was a breach of the contract because the Bylaws governing

the contract neither require nor provide for such a *"carte blanche"* release.

Count I also alleged resultant injury to plaintiff, exhaustion of administrative remedies, and inadequacy of remedies at law. Plaintiff asserts that count I stated a *prima facie* case for specific performance which, if proven, entitled him to the relief he sought and that is all that is required to defeat a section 2—615 motion to dismiss.

The gist of plaintiff's contentions against defendant's motion to dismiss the complaint in general and count I in particular is that defendant's arguments incorrectly attack the merits or substance of the complaint. Plaintiff argues that defendants' motion was more in the nature of a motion for summary judgment than a section 2—615 motion.

Similarly, plaintiff contends that the trial court improperly determined the factual merits of count I rather than the legal sufficiency of its allegations. Plaintiff argues that the issue of whether his application was complete was a controverted issue of fact with the hospital alleging that the application was incomplete and plaintiff alleging that it was complete. Plaintiff contends that the trial court improperly functioned as a fact finder when it, without reference to the Bylaws, assumed plaintiff's application was incomplete and based its ruling on that assumption.

Defendants counter that the trial court did not err in dismissing count I of plaintiff's complaint pursuant to section 2—615. Defendants contend that the trial court applied the proper standard in dismissing count I because it considered only the pleadings and attached exhibits in evaluating the legal sufficiency of count I.

Defendants argue that the pleadings failed to allege a critical missing link necessary for a cause of action for specific performance based on alleged breach of contract under the facts pleaded. The purported missing link is that EHA was obliged to process an incomplete application. Defendants further argue that the trial court correctly determined as a matter of law based on the pleadings that a condition precedent to any contract obligation for the hospital to evaluate an application was the supplying of all information by the applicant which the hospital deemed necessary even if the applicant had to sign an unconditional release to obtain the information.

■ To determine whether a complaint states a cause of action in specific performance, it is necessary that an enforceable contract exists and that the intent of the parties be established. (*Chicago Investment Corp. v. Dolins* (1981), 93 Ill. App. 3d 971, 974.) The determination of the intent of the parties may be a question of law or a

question of fact depending on the language of the writing supporting the alleged agreement. (93 Ill. App. 3d at 974.) If the language is unambiguous, the construction of the purported contract is a question of law. (93 Ill. App. 3d at 974.) The trial court must decide whether a document's language is ambiguous, because that decision itself is a question of law, and if the trial court finds the language is unambiguous, then the trial court may resolve the issue, as a question of law, pursuant to a motion to dismiss. 93 Ill. App. 3d at 974.

Here, although the trial court did not set out its analytical procedure, it is apparent that it concluded that the language in the Bylaws and the application form was unambiguous and could therefore be determined as a matter of law. The trial court concluded that the language required plaintiff to complete the application, including providing all information deemed necessary by the hospital, as a condition precedent to the hospital's obligation to process the application. We agree.

The first question before us in determining whether the trial court erred in dismissing count I on the ground it failed to state a cause of action is whether the trial court properly determined that plaintiff's completion of the application was a condition precedent to the alleged contract. Language in the Bylaws clearly places the burden of producing "adequate information for a proper evaluation" on the applicant. The Bylaws also make it clear that the hospital's review and evaluation of the application will only occur after all the pertinent information is available. Accordingly, we cannot say that the trial court abused its discretion in determining as a matter of law that the completion of the application by plaintiff was a condition precedent to the hospital's obligation to evaluate plaintiff's application and that the hospital's declination of consideration of an incomplete application could not be a breach of contract.

The next question in determining whether the trial court erred in dismissing count I for failing to state a cause of action is whether the trial court properly determined the application was incomplete. We find that the trial court did not err in making that determination because plaintiff's own pleadings, in conjunction with the language of the documents setting out the terms of the purported contract, support a conclusion, as a matter of law, that plaintiff's application was incomplete.

Plaintiff's allegations show that he refused to sign an unconditional release necessary to obtain information about his being placed on probation twice during his neurology residency. Plaintiff argues that he was not required to sign such an unconditional release and

that his application was already complete. However, in light of the unambiguous language in the application itself requiring plaintiff to "assist, in every way possible, *** in gathering the information to determine my qualifications," and the obvious need for information regarding the circumstances of the probation, we cannot say the trial court abused its discretion in finding that the application was incomplete.

Thus, the pleadings show that an unambiguous precondition to any obligation on the hospital to evaluate plaintiff's application was that plaintiff submit a completed application including all information deemed necessary by the hospital. The pleadings also show that plaintiff did not submit a completed application. Accordingly, count I of plaintiff's complaint did not state a cause of action in specific performance because plaintiff did not satisfy a precondition to the alleged contract. See *Thilman & Co. v. Esposito* (1980), 87 Ill. App. 3d 289, 296.

For all these reasons, we conclude that the trial court did not err when it determined that count I of plaintiff's complaint failed to state a cause of action.

Counts II and III of plaintiff's complaint essentially alleged deprivation of plaintiff's due process rights. Count II realleged the allegations contained in count I and further alleged that defendants deprived plaintiff of substantive and procedural due process with respect to several property or liberty interests purportedly arising from contractual and/or statutory bases.

For example, paragraph 47 of plaintiff's complaint states:

"47. Defendants [*sic*] wrongful refusal to honestly and fairly consider and evaluate plaintiff's application for medical staff membership unless he executed a 'carte blanche' release in contravention of Edward Hospital's Medical Staff Bylaws was arbitrary, capricious, without justification, and not supported by any reasonable grounds, and, therefore, has deprived plaintiff of substantive and procedural due process and has violated his right to basic fair procedure. Furthermore, the procedures actually followed by the defendants are in violation of the letter and spirit of 42 U.C.S., Sec. 11111 *et seq.*, governing the standards for professional review actions."

■ In his appellate brief, plaintiff states that "[r]eference to the Health Care Quality Improvement Act [Health Care Act], 42 U.S.C. §11111 was made in paragraph 47 of the complaint as a guideline only as to what the federal government considers appropriate standards for professional review actions and the nature of the process due in

the physician-hospital relationship." The Health Care Act has two main features: (1) it provides legal immunity for physicians engaged in peer review, and (2) it establishes a national clearinghouse to collect information on physicians. (Adler, "Stalking the Rogue Physician: An Analysis of the Health Care Quality Improvement Act," 28 Am. Bus. L.J. 683, 702 (1991).) Thus, the Health Care Act does not provide a private cause of action for a physician seeking hospital staff membership. (See *Caine v. Hardy* (S.D. Miss. 1989), 715 F. Supp. 166, 170.) Accordingly, we find that count II of plaintiff's complaint does not state a cause of action based on 42 U.S.C. §11111 (1988) of the Health Care Quality Improvement Act of 1986. However, we will determine whether the allegations in paragraph 47 of plaintiff's complaint state a cause of action on some other basis.

Count II also alleged deprivations of procedural due process and a violation of plaintiff's "right to basic fair procedure" by: (1) defendants' arbitrary, capricious and unreasonable refusal to furnish plaintiff with a copy of "his credentials file"; (2) defendants' arbitrary, capricious and unreasonable refusal to afford plaintiff a hearing in contravention of the Bylaws; and (3) Meyer's wrongful interjection of "herself and her personal opinions into the credentialing process" in a meeting contrary to the Bylaws.

Count III of plaintiff's complaint realleged the allegations contained in counts I and II and also alleged that when EHA rendered "its decision of February 25, 1991, regarding plaintiff's application for Medical Staff membership," it was State action. Count III further alleged that EHA's action therefore deprived plaintiff of his due process rights under the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) and 42 U.S.C. §1983 (1988).

On appeal, plaintiff contends that count II states a cause of action seeking judicial review of the conduct alleged in count II. In reaching this conclusion, plaintiff relies on an assertion that a public hospital's action in rejecting an application for staff membership may be reviewed to determine whether the rejection was arbitrary, capricious, or unreasonable.

Defendants respond that count II is "rambling and muddled" and failed to inform defendants of the claim against them and is subject to dismissal on that basis alone. Defendants also contend that if count II is evaluated on the basis of a cause of action seeking judicial review to determine whether the alleged "rejection" of plaintiff's application was arbitrary, capricious, or unreasonable, it still fails. Defendants argue that count II fails to state such a cause of action because it is based on a faulty factual predicate, *i.e.*, that plaintiff's application

was rejected. Defendants assert that the mere refusal to process an incomplete application is not a rejection subject to judicial review. In the absence of a reviewable action, defendants posit that plaintiff's other count II allegations (which defendants characterize as largely conclusory) are immaterial.

The gist of defendants' contentions with respect to count III is that count III fails to state a cause of action because it fails to show that plaintiff had a property or liberty interest at stake in applying for staff membership. Defendants also assert that even if plaintiff had a property interest or liberty interest at stake, he received all the process he was due.

In granting defendants' motion to dismiss, the trial court concluded that the pleadings showed that the hospital did not reject plaintiff's application, but only "declined to consider the application because it was incomplete." The trial court further concluded that the hospital's declination to consider the application did not give rise to any property or liberty interests because plaintiff failed to fulfill his obligation to complete the application before the hospital was required to evaluate it. The trial court also concluded that whether the hospital was public or private was therefore not dispositive.

●5 The question before us is whether the trial court's determination was proper in a section 2—615 motion to dismiss. We agree with the trial court that the allegations of the pleadings show, even when liberally construed in favor of plaintiff, that the hospital did not reject plaintiff's application. Although plaintiff is correct that a public hospital's rejection of an application for staff membership may be judicially reviewed to determine if the rejection was arbitrary, capricious or unreasonable (*Mauer v. Highland Park Hospital Foundation* (1967), 90 Ill. App. 2d 409, 413), such a cause of action requires that the application in question be rejected. Thus a rejection of the application is necessary to state the cause of action plaintiff's complaint purports to state.

Here, a careful review of the pleadings shows that the hospital did not reject plaintiff's application for staff membership. The pleadings, particularly in the series of letters exchanged between plaintiff and the hospital, show that the hospital determined that plaintiff was required to provide the hospital with information concerning his two periods of probation while a resident at Loyola in order to complete his application and thereby be entitled to an evaluation of his qualifications for staff membership. Loyola refused to provide that information without an unconditional release from plaintiff. Plaintiff refused to sign such a release. The hospital advised plaintiff that it would con-

sider the application voluntarily withdrawn unless plaintiff provided the information it deemed necessary. Plaintiff did not provide the information. Finally, the hospital notified plaintiff that it declined to determine whether plaintiff was qualified because his application was incomplete.

Based on the pleadings, we find as a matter of law that plaintiff has alleged insufficient facts to support his claim of arbitrary, capricious, or unreasonable behavior by the hospital. The Bylaws clearly placed the "burden of producing adequate information for a proper evaluation" of an applicant for medical staff privileges on the applicant. It is reasonable to expect the hospital to require information regarding two admitted periods of probation during an applicant's residency for a proper evaluation. The Bylaws specifically require an applicant to sign releases under the good-faith-and-without-malice standard but do not limit the releases which could be required to that standard. By the specific terms of the application form, the applicant agreed "[t]o assist in every way possible, this medical staff and its representatives, in gathering the information necessary to determine my qualifications."

Moreover, the Bylaws show that the hospital is only required to evaluate a completed application which includes all the information deemed necessary. Accordingly, we find, based on the pleadings, and contrary to plaintiff's alleged conclusions, that it was not arbitrary, capricious, or unreasonable for the hospital to refuse to evaluate plaintiff's application unless he provided the information necessary to complete his application.

We find that the pleadings show that the hospital's actions did not constitute a rejection of plaintiff's application nor any other substantive decision on the application. Accordingly, it was not arbitrary, capricious or unreasonable for the hospital to refuse a hearing and appellate review to plaintiff. Plaintiff's reliance on *Mauer* (90 Ill. App. 2d 409) is misplaced because that case involved a rejection of an application, but there was no rejection or other substantive decision here. We find nothing in the Bylaws which would require the hospital to provide a hearing to an applicant for staff membership who has not submitted a complete application.

The pleadings fail to allege sufficient facts to support plaintiff's claim that the meeting convened by Meyer deprived plaintiff of procedural due process. Plaintiff's complaint shows that the meeting gave plaintiff an opportunity to present his views to hospital officials as to why he refused to execute an unconditional release. Plaintiff specifically agreed to attend such meetings when he signed the application

form. We fail to see how such a meeting could constitute a deprivation of plaintiff's procedural due process rights.

■ Plaintiff's final specific allegation in counts II and III concerns the hospital's denial of plaintiff's request for access to the credentials file maintained by the hospital in relation to plaintiff's application for staff privileges. Plaintiff's complaint alleges that the denial was a violation of plaintiff's right to basic fair procedure and deprived plaintiff of procedural due process.

The pleadings show that the hospital refused to provide plaintiff with a copy of the file on the ground that the information was privileged and confidential under the Medical Studies Act (Act) (Ill. Rev. Stat. 1991, ch. 110, par. 8—2101 *et seq.*). The Act provides, in relevant part:

> "Information obtained. All information, interviews, reports, statements, memoranda or other data of *** committees of licensed or accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, (but not the medical records pertaining to the patient), used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be privileged, strictly confidential and shall be used only for medical research, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges, except that in any hospital proceeding to decide upon a physician's staff privileges, or in any judicial review thereof, the claim of confidentiality shall not be invoked to deny such physician access to or use of data upon which such a decision was based." Ill. Rev. Stat. 1991, ch. 110, par. 8—2101.

Plaintiff contends that the exception provided in the Act clearly applied to him and required that the hospital allow him access to the credentials file. We disagree.

The fundamental rule of statutory construction is to give effect to the intent of the legislature. (*State v. Mikusch* (1990), 138 Ill. 2d 242, 247.) To do that, a court first looks to the language of the statute, and, if the language is clear and unambiguous, the court should give it effect and not employ extrinsic aids to construction. *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277.

The language of section 8—2101 clearly and unambiguously provides that, as a general rule, all information used by hospital committees in proceedings to decide upon physician staff privileges is privi-

leged and strictly confidential. The language unambiguously provides that the only exception to the general rule of strict confidentiality in such a proceeding or judicial review thereof is that "the claim of confidentiality shall not be invoked to deny such physician access to or use of data upon which such a decision was based." Ill. Rev. Stat. 1991, ch. 110, par. 8—2101.

The language of the statute makes it clear that the exception to the general rule of confidentiality is limited to information upon which a hospital physician staffing decision was based. Therefore the exception applies only to information actually used by a hospital to make a physician staffing decision, and the exception does not apply to information not actually used as the basis of a physician staffing decision.

It follows that where no physician staffing decision was made, the exception does not apply. There can be no information used as the basis of a physician staffing decision when no such decision was made.

Here, no decision was made regarding plaintiff's application for staff membership because plaintiff's application was incomplete. Thus, the exception to the rule of confidentiality does not apply in this case because no decision was made on plaintiff's application. We therefore find that plaintiff has not alleged sufficient facts to support his claim that he was wrongfully denied access to the credentials file.

Thus, the trial court did not err in denying plaintiff's request for access to the credentials file. Furthermore, the trial court did not err in determining that plaintiff's allegations regarding the credentials file failed to state a cause of action.

■ There are other reasons why counts II and III fail to state a cause of action. The requirements of due process encompassed by the fourteenth amendment apply only to a State's deprivation of life, liberty or property. (*Board of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 569, 33 L. Ed. 2d 548, 556, 92 S. Ct. 2701, 2705.) In order to state a cause of action for a due process violation under the fourteenth amendment, a plaintiff must allege deprivation of a liberty or property interest and State action. (*Nicholson v. Chicago Bar Association* (1992), 233 Ill. App. 3d 1040, 1049.) The same elements are necessary to state a cause of action under section 1983. *Adickes v. S.H. Kress & Co.* (1970), 398 U.S. 144, 150, 26 L. Ed. 2d 142, 150, 90 S. Ct. 1598, 1604.

Here, in granting defendants' motion to dismiss plaintiff's complaint, the trial court assumed that the alleged deprivations were the result of State action. The trial court therefore based its ruling on its conclusion that the hospital's actions did not give rise to any property or liberty interests. Thus, the question before us with respect to

counts II and III is whether the trial court erred when it determined that plaintiff's complaint was insufficient under section 2—615 because it did not allege the deprivation of a property or liberty interest.

*Property.* "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth,* 408 U.S. at 577, 33 L. Ed. 2d at 561, 92 S. Ct. at 2709.

On appeal, plaintiff asserts that his alleged property interest was his right to have his application fairly considered and evaluated in accordance with the terms of the Bylaws. Plaintiff also argues diminishment of the rights granted to him by the State under his license to practice medicine.

We find, as a matter of law, that plaintiff's complaint failed to allege facts to support a property interest which could give rise to a deprivation of his due process rights. In the first place, procedural protections, such as plaintiff alleges under the Bylaws, do not create an entitlement upon which a claim of deprivation of property without due process of law can be founded. (*Campbell v. City of Champaign* (7th Cir. 1991), 940 F.2d 1111, 1113.) Furthermore, Illinois law does not grant a licensed physician a property right to practice at the hospital of his choice. (*Tunca v. Lutheran General Hospital* (7th. Cir. 1988), 844 F.2d 411, 414.) Accordingly, we find that the trial court did not err when it found as a matter of law, based on the pleadings, that plaintiff's complaint failed to give rise to a property interest.

*Liberty.* While not defined with exactness, the concept of liberty protected by the due process clause of the fourteenth amendment includes occupational liberty in the sense of the freedom of an individual to engage in any of the common occupations of life. (*Roth,* 408 U.S. at 572, 33 L. Ed. 2d at 558, 92 S. Ct. at 2706.) However, it is the liberty to pursue a calling or occupation which is secured by the fourteenth amendment, not the right to a specific job or situation. (*Wroblewski v. City of Washburn* (7th Cir. 1992), 965 F.2d 452, 455.) Accordingly, being a member of a hospital medical staff is not an occupation; rather, it is a privilege attached to an occupation, and exclusion from membership of a hospital medical staff, without exclusion from the occupation, is not a deprivation of occupational liberty. *Illinois Psychological Association v. Falk* (7th Cir. 1987), 818 F.2d 1337, 1344.

Plaintiff's complaint alleges that, as a result of the hospital's actions, plaintiff suffered damage to his ability to earn a livelihood

and practice his chosen profession. But nothing in the pleadings alleges that plaintiff was foreclosed from practicing medicine privately. In fact, the pleadings show that plaintiff is engaged in the private practice of medicine.

We find, as a matter of law, that plaintiff's complaint failed to allege facts to support a liberty interest which could give rise to a deprivation of his due process rights. Plaintiff did not allege that the hospital's action foreclosed his freedom to take advantage of membership on the staff of other hospitals. (See *Nicholson*, 233 Ill. App. 3d at 1050.) Plaintiff is still employed as a physician and has not alleged any facts to show he is precluded from seeking membership on the staff of another hospital. Even if the hospital had rejected plaintiff's application, there would be no deprivation of a property interest absent a showing of a foreclosure of plaintiff's ability to engage in private practice. (*Todorov v. D C H Healthcare Authority* (11th Cir. 1991), 921 F.2d 1438, 1464.) Here, where the pleadings show that plaintiff failed to complete his application for staff membership, plaintiff's allegation of deprivation of his liberty interest fails as a matter of law. See *Suckle v. Madison General Hospital* (7th Cir. 1974), 499 F.2d 1364, 1367.

For all these reasons, we find that counts II and III of plaintiff's complaint failed to state a cause of action based on the actions of the hospital in declining to evaluate plaintiff's application. We also find that the trial court was correct in not allowing plaintiff access to information in the credentials file.

In summary, we hold that the trial court did not err in granting defendants' motion to dismiss plaintiff's complaint.

■ The next issue on appeal is whether the trial court erred when it stayed parts of plaintiff's discovery requests dealing with the credentials file. Plaintiff contends that the discovery limitation imposed by the trial court prevented plaintiff from obtaining information which was necessary to respond fully to the property interest and liberty interest issues. Plaintiff argues that it was an unconscionable abuse of discretion for the trial court to dismiss plaintiff's claims without allowing plaintiff access to information which might have included material facts which plaintiff could have alleged to establish a cause of action. Finally, plaintiff again asserts a right of access to the credentials file under the Medical Studies Act (Ill. Rev. Stat. 1991, ch. 110, par. 8—2101 *et seq.*).

Defendants respond that the trial court order staying plaintiff's discovery requests was well within the bounds of judicial discretion and consistent with the goal of judicial economy. Defendants argue

that the trial court properly did not allow plaintiff to try to overcome the pleading deficiencies of his complaint by embarking on a fishing expedition to obtain information he did not have when he filed his complaint. Finally, defendants assert that the trial court ruling did not violate the Medical Studies Act.

The purpose of discovery is to determine the truth. (*Buehler v. Whalen* (1977), 70 Ill. 2d 51, 67.) To achieve this end, the scope of discovery may be very broad. (See 134 Ill. 2d R. 201(b).) However, a trial court is afforded great latitude in ruling on discovery matters, and a reviewing court should not disturb such rulings absent a manifest abuse of discretion. *Maxwell v. Hobart Corp.* (1991), 216 Ill. App. 3d 108, 110.

We find that the trial court's ruling limiting discovery in this case to issues related to whether the hospital was a public hospital was not an abuse of its discretion. Our finding is based on the following: (1) defendants filed their motion to stay discovery at the same time they filed their motion to dismiss plaintiff's complaint in its entirety; (2) at that time, the court could have reasonably concluded that the primary issue in determining whether to grant defendants' motion to dismiss was whether the hospital was or was not a public hospital, and the court could therefore properly limit discovery to that issue; (3) despite plaintiff's arguments to the contrary, we find nothing in the record to suggest that the credentials file might contain information which could establish plaintiff's claim of a property interest or liberty interest; (4) despite plaintiff's arguments to the contrary, we find nothing in the record to indicate that the contents of the credentials file were disseminated to anyone with a questionable right to the contents of the file; and (5) as determined above, under the Medical Studies Act (Ill. Rev. Stat. 1991, ch. 110, par. 8—2101) the information in the credentials file was privileged and strictly confidential and therefore not subject to discovery under the circumstances of this case.

For these reasons, we hold that the trial court did not err in staying those parts of plaintiff's discovery requests dealing with the credentials file and the credentialing process.

■ The last issue on appeal is whether the trial court erred when it ruled that plaintiff's motion for sanctions was moot. Plaintiff filed the motion for sanctions pursuant to Supreme Court Rules 137 and 219(c) (134 Ill. 2d Rules 137, 219(c)) after concluding that Meyer had deliberately filed a false affidavit of compliance with discovery. Meyer's affidavit stated, in part, that to the best of her knowledge the hospital had produced all the records it could find concerning the relationship between EHA and EHD. The only record the hospital

produced regarding that relationship was a copy of EHA's lease and attachments. Plaintiff later independently obtained five documents which it contends clearly related to the EHA-EHD relationship.

In his motion for sanctions and on appeal, plaintiff maintains that Meyer either knew or reasonably should have known of the five documents (EHA's application for a permit to establish a hospital, two disclosure of ownership statements, EHA's articles of incorporation, and EHA's Bylaws). Plaintiff argues that Meyer's conduct, as an agent of EHA, in denying knowledge of the documents showed a "willful, intentional, contumacious and unwarranted disregard of the court's authority" which should have been sanctioned.

Plaintiff maintains that the dismissal of his complaint did not render his motion for sanctions moot. Plaintiff asserts that the trial court abused its discretion in ruling that the motion for sanctions was moot. As support for this assertion, plaintiff argues that the trial court failed to set out a basis for its decision denying plaintiff's motion for sanctions as required by Rule 137 (134 Ill. 2d R. 137).

Defendants contend that the trial court's dismissal of plaintiff's complaint without reaching the subject of the purported discovery violations whether the hospital was a public hospital rendered the discovery order moot. Defendants argue that because the discovery order was moot the only purpose of plaintiff's attempt to revive the motion for sanctions was the improper purpose of punishment. Finally, defendants assert that plaintiff's attorney's recurring obstinacy and refusal to comply with Supreme Court Rule 201(k) (134 Ill. 2d R. 201(k)) caused confusion regarding what documents plaintiff requested.

Under both Supreme Court Rules 137 and 219(c), a decision regarding the imposition of sanctions is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. (*North Shore Sign Co. v. Signature Design Group, Inc.* (1992), 237 Ill. App. 3d 782, 790; *Hartnett v. Stack* (1993), 241 Ill. App. 3d 157, 172.) The purpose of discovery violation sanctions under Rule 219(c) is to effect discovery and not to inflict punishment. (*Hartnett*, 241 Ill. App. 3d at 172-73.) The purpose of Rule 137 sanctions is to prevent a litigant from abusing the judicial process by penalizing the party who brings a vexatious or harassing action without a sufficient legal or factual foundation. (*North Shore Sign Co.*, 237 Ill. App. 3d 782.) Under Rule 137, the trial court must express the basis for its decision even when the court denies a motion for sanctions. 237 Ill. App. 3d at 791.

Here, where plaintiff alleges discovery violations warranting sanctions, Rule 219(c) would appear to be the applicable statute rather than Rule 137, given the purposes of the rules. However, we find that even if Rule 137 is the controlling statute, the trial court did not abuse its discretion in denying plaintiff's motion for sanctions.

First, we find plaintiff's contention that the trial court failed to set out the basis for its decision unpersuasive. The record shows that the trial court ruled on defendants' motion to dismiss plaintiff's complaint and plaintiff's motion for sanctions at the same time. After expressing its reasons for granting the motion to dismiss, including finding that the question of whether the hospital was a public or private hospital was not dispositive, the court stated "[t]hat renders moot the motion for sanctions." Thus, the trial court made several findings and then determined that the findings rendered plaintiff's motion for sanctions moot. We find that the trial court thereby satisfied the Rule 137 requirement that it express its basis for denying the motion for sanctions. Accordingly, we conclude that the trial court did not abuse its discretion in denying plaintiff's motion for sanctions under Rule 137 on the ground that it failed to express the basis for its decision.

We also find that the trial court did not abuse its discretion under Rule 219(c). We base our finding on the following: (1) the trial court assumed for purposes of its ruling on the motion to dismiss that the hospital was a public hospital; (2) consequently, the alleged discovery violations, which were related to the public hospital question, were not dispositive; (3) the purpose of Rule 219(c) is to effect discovery, not to punish; and (4) the effect of sanctions in these circumstances would only serve to punish. We also note that the trial court took an active role in this case in attempting to effect appropriate discovery and therefore was in a much better position than this court to determine whether sanctions were warranted.

For these reasons, we hold that the trial court did not err when it denied plaintiff's motion for sanctions.

Based on the foregoing, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

WOODWARD and COLWELL, JJ., concur.