Edward J. EYRING, M.D., individually and for the use and benefit of Edward J. Eyring, M.D., P.C., Plaintiff–Appellant,

v.

EAST TENNESSEE BAPTIST HOSPITAL, Defendant–Appellee.

Court of Appeals of Tennessee, Eastern Section.

Jan. 29, 1997.

Permission to Appeal Denied by Supreme Court July 14, 1997.

John K. King, Alan M. Parker, Lewis, King, Krieg, Waldrop & Catron, P.C., Knoxville, for Plaintiff–Appellant.

David L. Steed, Cornelius & Collins, Nashville, Marc E. Overlock, Robert J. Gonzales, Tennessee Medical Association, Nashville, for Tennessee Medical Association, Amicus Curiae.

William B. Hubbard, Weed, Hubbard, Berry & Doughty, Nashville, for Tennessee Hospital Association, Amicus Curiae.

R. Franklin Norton, Geoffrey D. Kressin, Wimberly Lawson Norton & Luhn, PLLC, Knoxville, for Defendant–Appellee.

Charles W. Burson, Attorney General & Reporter, Michelle Hohnke Joss, Assistant Attorney General, Nashville, for Intervenor/Appellee, State of Tennessee.

## OPINION

FRANKS, Judge.

In this action for breach of contract for damages, the defendant was granted summary judgment and plaintiff has appealed.

Plaintiff is a physician who was granted clinical privileges at Defendant Hospital in 1974. The hospital bylaws provided for a reappointment process every two years. This process had resulted in plaintiff's reappointment nine times.[1]

Plaintiff submitted his application for reappointment on October 4, 1991. Action was delayed on the application from January to March because of committee requests for information regarding pending malpractice claims. The Credential Committee's request that plaintiff provide the specific name of a Baptist staff physician who would cover his patients in his absence delayed action on the application from April to June. He offered instead several general statements assuring the Committee that his patients were always covered in his absence. Although plaintiff eventually offered specific names, these doctors were not accepted by the Committee because they were not in plaintiff's specialty, they told the Committee that they would not serve as his backups, or they were not members of the Baptist Hospital staff.

The application was delayed from June to August by a dispute over plaintiff's refusal to execute a release form[2] authorizing Park

---

1. By 1991, plaintiff had privileges at several other area hospitals, including the University of Tennessee Medical Center, Fort Sanders Hospital, Park West Hospital and others.

2. The release read in part:
   4. I authorize the hospital's Board of Directors, the Medical and Dental Staff Credentials Committee, and their representatives to consult with administrators and members of the Medical Staff of other hospitals or institutions with which I am or have been associated and consent to their inspection and review of all records and documents (including medical records) at such other hospitals or institutions which any of them may deem desirable to an evaluation of my application for Medical Staff privileges. They are likewise authorized to consult with any other person, firm, or corporation who may have information bearing on my professional competence, character and ethical qualifications.

West Hospital to supply information to Baptist Hospital regarding the recent revocation of his privileges at Park West. Plaintiff had signed a release in September 1991 but Park West would not release the information without a more current authorization. Plaintiff planned to sue Park West over its revocation of his privileges and he contended that the release could affect his ability to pursue that suit. He offered instead to appear before the Credentials Committee and provide them with the information they had requested from Park West.

On August 18, 1992, the Committee advised plaintiff that it was unable to continue processing his application because he had failed to provide the name of a physician on staff who agreed to cover for him and had failed to provide a current release for the Park West information. He was advised that his membership on the medical staff had expired effective immediately.

Shortly plaintiff brought this action, alleging breach of contract and claiming damages for loss of present and future income. The Trial Court ruled that the Hospital had not breached its contract with Plaintiff. It further ruled that on this record the Hospital was immune by virtue of T.C.A. § 63–6–219.

■ The Board for Licensing of Health Care Facilities, Tennessee Department of Health, ("BLHCF"), licenses and regulates hospitals in Tennessee. BLHCF requires all licensed hospitals to adopt bylaws setting forth due process procedures for depriving a physician of staff membership or clinical privileges. Tenn.Admin.Comp. § 1200–8–3–.02(2)(a). These bylaws serve as an enforceable contract between the physician and hospital. *Lewisburg Community Hospital v. Alfredson*, 805 S.W.2d 756 (Tenn.1991).

The relevant bylaws of the Hospital state that:

> 5. I hereby release from liability all representatives of the Hospital Board of Directors and its Medical and Dental Staff for their acts performed in good faith and without malice in connection with the evaluation of my application, my credentials and qualifications, and *I further release from any liability any and all individuals and organizations who provide in-*

Article III Membership; Section 2: Terms of appointment

A. Initial appointments and reappointments to the Medical Staff shall be made by the governing board. The governing body shall act on appointments, reappointments or revocations only after there has been a recommendation from the Medical Staff as provided in these Bylaws....

D. Every application and reapplication for staff appointment shall be signed by the applicant and shall contain the applicant's specific acknowledgment of every *Medical Staff member's obligations to provide continuous care and supervision of his patients, to abide by the Medical Staff Bylaws, Rules and Regulations*, to accept committee assignments and to accept consultation assignments. Further, *he agrees to the release of information regarding disciplinary action taken and information on his medical qualifications and performance, and to the release from liability those involved in giving or acquiring such information.* Each applicant shall present evidence of current licensure, relevant training and/or experience, current competence, health status and adequate professional liability insurance....

E. Should the Board of Directors wish to take the initiative by refusing to reappoint any member, it shall advise the Medical Staff, stating reasons and asking for recommendations as to further action.

F. *In no case shall the Board of Directors take action on an application, refuse to renew an appointment, or cancel an appointment previously made without conference with the Medical Staff. Final responsibility for appointment or cancellation of an appointment must rest with the Board of Directors.*

Section 3: Procedure for appointment

A. Application for membership on the Medical Staff shall be presented in writing

> *formation to the hospital or its Medical and Dental Staff in good faith and without malice concerning my professional competence, ethics, character, and other qualifications in connection with this application for membership and clinical privileges, and I hereby consent to the release of such information as may be requested.* (Emphasis supplied).

to the Chief Executive Officer on the prescribed form which shall state the qualifications of the applicant and must include letters of reference ... [h]e shall further agree to abide by these Bylaws, Rules and Regulations ... *[t]he applicant shall have 60 days to furnish said documentation. At that time, if his file is not complete, he will not be considered for review by the Credentials Committee and all privileges will be immediately suspended.* Any exceptions to this time limit shall be granted through written consent of the Chief Executive Officer, Chief of Staff, and Chief of Service.

B. The application will be referred by the Chief Executive Officer to the Credentials Committee which will investigate the character, qualifications, and standing of the applicant using the same procedural limitations and rights to a hearing as provided in Article V and VI of the Bylaws. A review by the Chief of the Department in which the applicant is applying will be accomplished before the application is sent to the Credentials Committee.

C. The Board of Directors acting on credentials shall either accept the recommendation of the Executive Committee of the Medical Staff or shall refer it back for further consideration. In the latter case, the Board of Directors shall instruct its secretary of state to the Executive Committee of the Medical Staff its reasons for such action. . . .

E. *By applying for appointment to the Medical Staff, each applicant thereby (1) signifies his willingness to appear for interviews in regard to his application, (2) authorizes the hospital to consult with members of the Medical Staff of other hospitals with which the applicant has been associated and with others who may have information bearing on his competence, character and ethical qualifications, (3)* consents to inspection by the hospital or its designees of all records and documents that may be material to an evaluation of his professional qualifications and competence to carry out the clinical privileges he requests as well as of his moral and ethical qualifications for staff membership, (4) releases from any and all liability any representatives of the hospital and/or its Medical Staff for any acts performed in good faith and without malice in connection with evaluation of the applicant and his credentials, and (5) releases from any and all liability all individuals and organizations who provide information to the hospital in good faith and without malice concerning the applicant's competence, ethics, character and other qualifications for staff appointment and clinical privileges, including otherwise privileged or confidential information.

Section 4: Reappointments

A. The Credentials Committee shall review all pertinent information available on each practitioner's birth month for the purpose of determining its recommendation for reappointments to the Medical Staff and for the granting of clinical privileges for the ensuing period and shall transmit its recommendations in writing to the Executive Committee of the Medical Staff with a copy to the affected practitioner. *The Credentials Committee may request information from other area hospitals regarding patient care activities.* A review of the practitioner's health status shall be included in the reappraisal process by the Credentials Committee. If the practitioner is dissatisfied with the recommendation, he may within ten (10) days request a hearing and proceedings under Article VI [Hearing and Review] of these bylaws. If no request is made, the recommendation shall be conclusively deemed to be acceptable to the practitioner.

B. Prior to the monthly governing meeting the Executive Committee of the Medical Staff shall make written recommendations to the governing body, through the Chief Executive Officer, concerning the reappointment and/or clinical privileges of each practitioner then scheduled for periodic reappointment. . . .

Article IV Clinical Privileges; Section 1: Clinical Privileges Restricted. . . .

B. Every initial application for staff appointment must contain a request for the specific clinical privileges desired by the applicant. The evaluation of such requests

shall be based upon the applicant's education, training, experience, demonstrated competence, references and other relevant information, including an appraisal by the clinical department in which such privileges are sought. *The applicant shall have the burden of establishing his qualifications and competency in the clinical privileges he requests....*

C. *Periodic redetermination of clinical privileges and the increase or curtailment of same shall be based upon the direct observation of care provided, review of the records of patients treated in this or other hospitals* and review of the records of the Medical Staff which document the evaluation of the member's participation in the delivery of medical care.

Bylaws of East Tennessee Baptist Hospital Medical and Dental Staff, 1992 (emphasis added).

The Rules and Regulations governing the Hospital Staff state in part:

Article II Admission and Discharge of Patients ...

3. Each member of the Medical Staff *shall name another member* of the Medical Staff who in his absence may be called to attend patients in case of emergency....

Rules and Regulations of East Tennessee Baptist Hospital Medical and Dental Staff, 1992 (emphasis added).

Plaintiff moved for partial summary judgment on the issue of contractual liability. He argued that he was justified in refusing to name a staff physician to cover him because this request had never been made of him before and it was not required by the Bylaws. He further argues that the Hospital made this request as a ploy, because it knew that there were a limited number of orthopedic specialists and knew that they would refuse to cover for plaintiff.

He also argues that he was justified in refusing to sign another release for Park West, in light of his litigation with that hospital. He therefore asserts that Baptist Hospital breached its bylaws by allowing the Credentials Committee to terminate his privileges at the hospital. He points to Article II, § 2(A) & (F), which indicate that the Board of Directors must make that decision.

The Trial Judge examined the Bylaws and Regulations and determined that plaintiff had agreed to release information regarding his performance and to authorize the Hospital to consult with other hospitals with which the applicant has been associated. He found that the offer to appear before the Committee and supply members with any information they sought about his activities at Park West did not constitute substantial compliance. The Court held that plaintiff's refusal to execute a release had resulted in an incomplete application, which allowed the Hospital to suspend plaintiff's privileges. The Court also found that plaintiff's argument that he was deprived of a hearing before the Executive Committee was not meritorious, in light of his failure to make any request for review per Bylaw Article VI.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. T.R.C.P. Rule 56.03; *Alexander v. Memphis Individual Practice Assoc.,* 870 S.W.2d 278 (Tenn.1993). It is not disputed that plaintiff did not name a physician who was acceptable to the hospital and would not sign the second release form. The disagreement centers on whether these circumstances constituted a violation of the contract by the hospital. The interpretation of a contract is a question of law, for which our standard of review is *de novo* with no presumption of correctness. T.R.A.P. 13(d); *Rapp Const. Co. v. Jay Realty Co.,* 809 S.W.2d 490, 491 (Tenn.App.1991).

■ By applying for hospital privileges, plaintiff agreed to abide by the Bylaws and Rules and Regulations, Bylaws, Article III, § 2(D). The Rules require that plaintiff provide the specific name of a staff physician to cover his patients in his absence. Rules and Regulations, Article II, § 3. However, plaintiff appears to have met this requirement. He provided the name of Dr. Natelson, a member of the Baptist Hospital Staff. The defendant's argument that the doctor is not acceptable because Dr. Natelson is not an orthopedic doctor must fail. The rules include no requirement that the covering phy-

sician have the same specialty as the primary physician.

■ However, we conclude, as did the Trial Judge, that defendant was justified in refusing to consider plaintiff's application. The Bylaws require that "[t]he Credentials Committee may request information from other area hospitals regarding patient care activities." Bylaws, Article V, § 4(A). Plaintiff's submission of an application authorized the Hospital to consult with other hospitals with which he had been associated. Bylaws, Article V, § 3(E)(2). He also agreed to the release of information regarding "disciplinary action taken and information on his medical qualifications and performance." Bylaws, Article III, § 2(D). His refusal[3] to release this information from Park West, therefore, contradicted his obligations under his contract with defendant.

■ Plaintiff's offers to present documents and appear before the Committee to explain the situation, instead of signing the release of information from Park West, were insufficient. It was not unreasonable for defendant to refuse to accept plaintiff's version of his revocation at Park West. Without Park West's input, the Credentials Committee did not have a fully informed basis on which to make its recommendation to the Medical Staff Executive Committee.

■ While the Bylaws state that the Board of Directors must make the final decision to cancel an appointment, plaintiff's staff privileges had expired, and the statement assumes that a completed application has been offered, as a condition precedent to an assessment by the Board. *See Evers v. Edward Hospital Association,* 247 Ill.App.3d 717, 187 Ill.Dec. 490, 617 N.E.2d 1211, 1219 (1993). (Application for medical staff membership clearly required the plaintiff to assist in gathering information to determine his qualifications, therefore plaintiff physician's failure to sign an unconditional release of information from a previous employer rendered his application incomplete. Since completion of the application was found to be a condition precedent to the contract, the trial court's dismissal of the action for failing to state a cause of action was affirmed.) Plaintiff did not offer a complete application and defendant was not under its bylaws, required to process an incomplete application.

The Trial Court, after his ruling on the issue of contractual liability, noted:

> the defendant takes the position that not only was there no breach of contract, a position with which the Court does now agree, but that the defendant is immune from suit because of the provisions of the Tennessee Peer Review Statute.
>
> It is probably not necessary for the Court to deal at length with those issues. But suffice it to say, the Court feels constrained to make some comments about decisions taken by the parties with respect to that statute....

■ Courts should avoid dealing with constitutional questions abstractly or issuing advisory opinions. *State v. King,* 635 S.W.2d 113, 114 (Tenn.1982).

We affirm the Trial Court's judgment that there is no material evidence that the contract between the parties had been breached, and the action should not proceed based on contractual liability. Accordingly, we do not reach the remaining issues raised on appeal but vacate the Trial Court's further rulings as being unnecessary to judgment. The cost of the appeal is assessed to the plaintiff, and the cause remanded.

GODDARD, P.J., and McMURRAY, J., concur.

---

**3.** His assertion that he fulfilled his obligation to sign the release in September 1991 and that it was unreasonable to ask him to sign another in the middle of 1992 ignores the fact some measure of the delay in processing his application was his responsibility.