Thomas DRAGHI, M.D.,
M.P.H., Plaintiff,

v.

COUNTY OF COOK, et al., Defendants.

No. 97 C 2466.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 12, 1997.

Joseph A. Morris, Joseph N. Rathnau, Charles Haxton Bjork, Morris, Rathnau & DeLaRosa, Chicago, IL, for Plaintiff.

Melissa Reardon Henry, Cook County State's Atty., Chicago, IL, Randolph Mitchell Johnston, Asst. State's Attorney's Office, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Dr. Thomas Draghi ("Draghi") has filed a multicount Complaint—now an Amended Complaint ("AC")—against the County of Cook ("County"), the Cook County Board ("Board") and its members, and several members of the top echelon at Cook County Hospital ("Hospital"), charging them with:

    1. federal law violations, actionable under 42 U.S.C. § 1983 ("Section 1983"),[1] of Draghi's constitutional rights by reason of his original suspension and then the later termination of his employment as a physician at Hospital, as well as of his medical staff membership and clinical privileges at Hospital; and

    2. violations of his rights under state law, advanced under supplemental jurisdiction principles (28 U.S.C. § 1367(a)).

All defendants have filed motions under Rule 12(b)(6) to dismiss the AC for failure to state a claim (Board's motion differs from the others in that it asserts that it is not a suable entity under state law), and County and the three Hospital personnel have also filed a Rule 56 motion for summary judgment. All motions are now fully briefed.

If and to the extent that the four defendants' Rule 56 motion turns out to be successful, the same legal principles also call for a corresponding ruling in favor of Board (if it is suable at all) and Board's members as well. And if and to the extent that the principal Rule 12(b)(6) motion were to prove successful, those dismissals of certain claims would also benefit not just the movants but all of the defendants. For those reasons, this opinion will simply use the collective term "defendants" in referring to the several movants, even though this Court's usual preference in its opinions is to identify the litigants in less generic terms.

For the reasons stated in this memorandum opinion and order, defendants' Rule 56 motion is granted as to most but not all of Draghi's federal claims and to two of Draghi's three state law claims. To the extent that his federal claims do survive summary judgment for now, however, Draghi must provide further input to bring himself within the coverage of Section 1983. And that being true, any final decision as to the disposition of Draghi's other state law claim is also deferred.

### Facts

As Rules 12(b)(6) and 56 respectively require, this opinion looks at Draghi's allegations and his Rule–56–advanced facts in a manner favorable to him (with reasonable inferences drawn in his favor). Because a minimalist approach to the factual background is all that is needed for present purposes, the *Facts* section of this opinion can be quite brief.

There is no question that Draghi's clinical privileges at Hospital were summarily suspended on October 18, 1993. There is also no dispute between the parties that Cook County Medical Staff Bylaws Art. VII, § 9 operated automatically to suspend Draghi's employment at the same time, so that Draghi rendered no services at Hospital at any time after October 1983. What then ensued was considerable and protracted administrative

---

1. Draghi's counsel's inclusion of AC Count IX, which purports to invoke 42 U.S.C. § 1985 based on a claimed conspiracy to violate Draghi's civil rights, would clearly be sanctionable if Fed. R.Civ.P. ("Rule") 11 had not been rendered essentially toothless by its 1993 amendments. It has been firmly established for over a quarter century that no Section 1985(3) claim is viable unless there is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" (*Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971))—and the other subparts of Section 1985 are not even remotely relevant. AC Count IX is dismissed with prejudice.

activity, carried out in accordance with the provisions governing Hospital's committee and staff structure, with the following sequence of events ultimately taking place in 1995:

1. On February 7 Board voted unanimously to adopt the recommendation that had been made by Hospital's Joint Conference Committee, that Draghi's medical staff membership and clinical privileges be wholly and permanently terminated.

2. On March 7 the Joint Conference Committee (to which the matter had been returned for consideration pursuant to the Medical Staff Bylaws provision) voted to retain that original recommendation of Draghi's total termination.

3. On March 21 Board deferred action on that recommendation to its next meeting, and then on April 5 Board voted unanimously to confirm its February 7 decision: It indeed terminated Draghi's employment, his medical staff membership and his clinical privileges.

4. On April 11 Hospital's Interim Medical Director Dr. William Willoughby wrote Draghi a letter advising him of Board's decision (Draghi Ex. I, a copy of which is attached to this opinion).

This lawsuit was not brought until April 9, 1997 (the filing date of Draghi's original Complaint).

*Statutes of Limitations Motions*

■ Both sides agree on the long-established proposition that the limitations period for Section 1983 claims is two years (each side accurately cites to the same case, one of the numerous decisions so holding, *Palmer v. Board of Educ.*, 46 F.3d 682, 684 (7th Cir. 1995)). When Draghi filed this action on April 11, 1997, he included an allegation in Complaint ¶ 262 that has been carried forward into AC ¶ 82 in this fashion:

On or about April 11, 1995, the Cook County Board met for a second time and considered the recommendation of the Executive Medical Staff and the conflicting recommendation of the Joint Conference Committee.

That date is of course wrong as to Board's meeting date—that had taken place on April 5. But AC ¶ 84 correctly specifies April 11 as the date on which Draghi received notice of Board's final adverse decision—and if that is the operative event for limitations purposes, a portion (but not all) of Draghi's federal claims will unquestionably have been timely filed.

But as the *Facts* section has reflected, Draghi is clearly wrong in all events in attempting to advance two of his Section 1983 claims, those under AC Counts I and IV. Count I is sought to be grounded in a claimed violation of Draghi's rights to due process regarding his suspension of clinical privileges and employment, and that suspension took place fully three and one-half years before he filed suit. Similarly, Count IV asserts a violation of Draghi's constitutional rights in his allegedly being compelled to practice medicine in a substandard fashion, something that also necessarily antedated his suspension—and that certainly ended—in October 1993. Hence there is no material issue of fact as to either of those claims, and defendants are entitled to a judgment as a matter of law regarding AC Counts I and IV.

■ As for Draghi's asserted Section 1983 claim that he advances in AC Count II (based on his ultimate termination), the parties engage in a legal battle over whether the April 9, 1997 filing of the original Complaint is to be judged (1) in terms of the April 5, 1995 date on which Board took its final action (in which event the Count II claim is time-barred) or (2) in terms of the six-day-later April 11, 1995 notification date of the April 5 action (in which event the claim must be tested on grounds other than timeliness). But on that score this Court need not resolve the matter on the battleground that the litigants have chosen: that is, the question whether the date of an employer's adverse action or the date on which the employee is told about it should control as a general matter. Instead, it is plain that the more specific manner in which the April 11 notification letter to Draghi was framed calls for the application of that date (and not the earlier April 5 date of Board's vote) as controlling here.

As the attached exhibit (Draghi Ex. I) reflects, on April 11 Dr. Willoughby told Dr. Draghi, without specifying the date on which Board had taken its final action:

> After convening in executive session to consider the prior proceedings, findings and recommendations in this matter, including the March 7, 1995 recommendation of the Joint Conference Committee, the Board of Commissioners voted to terminate your employment with Cook County and your Medical Staff Appointment and Clinical Privileges at Cook County Hospital.

And Dr. Willoughby then went on to frame the effectiveness of that termination as a *current* and not an *earlier* event:

> This action is effective immediately.

Having stated the matter in those express terms in its notice to Draghi, Board cannot now resort to a different contention that its termination action had been effective on April 5 rather than "effective immediately" on April 11. Even though it may be difficult to understand why Draghi waited as long as he did to file this lawsuit (if he had done so as late as 23 months after his final termination, say by the end of March 1997, there could have been no possible dispute as to timeliness), that is after all what statutes of limitation are for. Draghi was entitled to rely on the April 11 date in bringing his Section 1983 action, rather than being placed on inquiry notice as to a possible earlier date of termination (as defendants would have it). Defendants' Rule 56 motion is therefore denied as to AC Count II, which must then be viewed in Rule 12(b)(6) terms.

■ Only brief comment need be made as to Draghi's remaining Section 1983 claims. AC Count III complains of actions taken by defendants about May 1, 1995, so that no statute of limitations defense can arguably impact that claim. And finally AC Count V, which charges defendants with retaliatory conduct because of Draghi's "whistleblowing" activities, must necessarily succumb or survive as to its timeliness to exactly the same extent as the adverse conduct that Draghi ascribes to defendants also succumbs or survives. So any such claim of retaliation based on the October 1993 suspension is time-barred, while the corresponding retaliation claim based on Draghi's April 11, 1995 final termination survives in terms of timeliness.

■ To turn to Draghi's state law claims, defendants challenge two of those three—SAC Counts VI and VIII, each of which sounds in tort—as barred by the one-year limitations period established by the Illinois Tort Immunity Act, 745 ILCS 10/8–101 (which by its terms applies to any Illinois-law-based claim, whether asserted under common law or statute or the Illinois Constitution). Though the plain language of the statute is enough to jettison those claims, defendants also correctly point to a pair of decisions by colleagues of this Court that apply the statute in accordance with its express language (*Northen v. City of Chicago*, 841 F.Supp. 234, 236 (N.D.Ill.1993); *Simmons v. Chicago Pub. Library*, 860 F.Supp. 490 494 n. 5 (N.D.Ill.1994)).

Draghi seeks to counter that fatal blow with the extraordinarily bizarre argument that the Tort Immunity Act's limitations period is somehow "superseded" by Draghi's Section 1983 claim—a contention that is rendered doubly absurd because Draghi's counsel appears to have forgotten that Section 1983 has no limitations period of its own, but has simply borrowed the general Illinois two-year statute of limitations applicable to tort claims. In this instance the specific Illinois statute that governs a particular category of tort claims (those brought against local governmental entities and their employees) necessarily prevails over the generic two-year limitations period (735 ILCS 5/13–202) where a *state law* tort claim is involved (see, e.g., *Medina v. Taylor*, 185 Ill.App.3d 808, 134 Ill.Dec. 33, 542 N.E.2d 33 (1st Dist.1989)). To the extent that (as here) a plaintiff has chosen to proceed with any claim under state law, he or she must take *that* claim bag and baggage—and that means subject to its state-created limitations period, *without* any absurd notion of federal preemption that properly applies only to federal claims (contrast *Palmer*, 46 F.3d at 684).

In sum, because there is no genuine issue of material fact in connection with those claims, defendants are also entitled to a judg-

ment as a matter of law in that respect. AC Counts VI and VIII are also dismissed.

### Motions To Dismiss

Although the litigants have also filed extensive memoranda dealing with defendants' attacks on the substantive requirements of Draghi's claims that have now survived the challenge on limitations grounds, those defense motions cannot fairly be treated as potentially dispositive because Draghi's response resorts in part (as is entirely appropriate) on *allegations* that he has made in the AC. In the Rule 12(b)(6) context, those allegations must be accepted as true. And because defendants' grounds for attack (except perhaps as to the remaining state law claim under AC Count VII) can best be addressed by requiring Draghi to respond to the rest of defendants' Rule 56 motion, no action will now be taken on the motions to dismiss.

### Substantive Summary Judgment Motion

Because this Court had directed Draghi's counsel to focus his Rule 56 response in the first instance on questions of limitations, Draghi has properly not yet spoken to that motion in substantive terms. But as indicated in the preceding sentence, Draghi's Rule 12(b)(6) responsive memorandum has already dealt fully with the law on which he relies to support the existence of a claimed property or liberty interest—an essential ingredient of any Section 1983 claim. Accordingly all that is lacking is for Draghi to supply the claimed *facts* rather than mere allegations that will enable this Court to determine the presence or absence of that necessary ingredient—as Rule 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Here Draghi is the "adverse party" spoken of in that Rule. And that means that he must provide factual support to counter what defendants have advanced to negate the existence of a constitutionally-cognizable property or liberty interest, in the latter respect requiring the "stigma plus" showing demanded by *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) and their numerous progeny.

### Conclusion

With no genuine issue of material fact being present to avoid that result, defendants are entitled to a judgment as a matter of law with respect to AC Counts I and IV, part of AC Count V and all of AC Counts VI, VIII and IX. In all other respects defendants' Rule 56 motion is denied—but only for the time being. And for the reasons stated earlier, defendants' motions to dismiss are deferred for the present, because they may prove moot if the same lines of attack were later to prevail on summary judgment grounds.

To enable this Court to deal with the other facets of defendants' Rule 56 motion, Draghi is ordered on or before December 1, 1997 to file in this Court's chambers (and of course to serve on defense counsel) his factual submissions to support his contention that defendants' complained-of actions referred to in the still-surviving Section 1983 claims have deprived Draghi of any constitutionally-recognized property or liberty interests that qualify for Fourteenth Amendment purposes. And because Draghi's sole remaining state law claim (AC Count VII) sounds in breach of contract, it is expected that Draghi's December 1 submission regarding his claimed property interests will likely control the viability or nonviability of that state law claim too. This action is set for a status hearing at 9 a.m. December 22, 1997.

April 11, 1995

Thomas Draghi, M.D.

155 N. Linden

Oak Park, Illinois 60302

Dear Dr Draghi:

Pursuant to Article VII, Section 6(e) of the Bylaws of the Medical Staff of Cook County

Hospital, this letter serves as notice to you of the final action of the Cook County Board of Commissioners regarding the Corrective Action to be taken with regard to your professional conduct at Cook County Hospital. After convening in executive session to consider the prior proceedings, findings and recommendations in this matter, including the March 7, 1995 recommendation of the Joint Conference Committee, the Board of Commissioners voted to terminate your employment with Cook County and your Medical Staff Appointment and Clinical Privileges at Cook County Hospital.

This action is effective immediately. Please return any Hospital property (e.g. identification badge, pager, keys, parking pass, etc.) you have in your possession to your Divisional Chairperson. Any questions you have with regard to the processing of your termination may be directed to the Hospital's Office of Human Resources.

Yours truly,

/s/ William F. Willoughby

William F. Willoughby, M.D., Ph.D.

Interim Medical Director
Cook County Hospital

WFW/ab

cc: Terrence Conway, M.D.
Brendan Reilly, M.D.
John Barrett, M.D.
Ms. Barbara Penn