Thomas DRAGHI, M.D.,
M.P.H., Plaintiff,

v.

COUNTY OF COOK, et al., Defendants.

No. 97 C 2466.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 10, 1998.

Joseph A. Morris of Morris, Rathnau & De La Rosa, Chicago, IL, for Plaintiff.

Randolph M. Johnston of Cook County State's Attorney, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Until now Dr. Thomas Draghi ("Draghi") has been able to dodge the bullets fired by the numerous defendants in this action— County of Cook ("County"), Cook County Board ("Board") and its members, and several members of the top echelon at Cook County Hospital ("Hospital")—that could prove fatal to Draghi's efforts to claim a violation of his constitutional rights caused by the termination of his employment and his medical staff privileges at Hospital. Now, however, defendants' earlier-filed Fed.R.Civ.P. ("Rule") 56 motion has inflicted a mortal wound on Draghi's still-surviving claims.

This Court's November 10, 1997 memorandum opinion and order ("Opinion," 1997 WL 711430) had granted defendants' then-pending Rule 56 summary judgment motion in material part by dispatching Counts I, IV, VI, VII, IX and part of Count V of Draghi's Amended Complaint ("AC"). But as to the remaining federal-question claims advanced by Draghi under 42 U.S.C. § 1983 ("Section 1983"), Opinion at *4–*5 directed Draghi's counsel to provide *facts* rather than mere *allegations* (the latter being insufficient under Rule 56(e)) to support the existence of a claimed property or liberty interest, which is an essential ingredient of any claim based on an asserted violation of the Due Process Clause. Although the Opinion contained no express reference to Draghi's only remaining state law claim in AC Count VII, that claim sounds in breach of contract, so that a negative answer to the property interest question (and the related contract issues) for Draghi's Section 1983 claims (questions that also implicate matters of state contract law) will dispose of the Count VII claim too.

Draghi has sought to respond to the Opinion's directive by filing a response (here cited as "Draghi 12(N) Response") under this District Court's General Rule ("GR") 12(N), one part of the GRs that have been adopted to facilitate the smoking out of any contested issues of material fact (or of the absence of any such issues) under Rule 56. Now defendants have filed their Reply to that most recent filing by Draghi. Accordingly defendants' remaining Rule 56 motion is ripe for resolution.

### Facts

As stated earlier, both Rule 56(e) and the uniform case law applying it teach that when a lawsuit moves from the pleading stage to the consideration of a Rule 56 motion (the latter, as this Court has frequently stated, being a substitute for trial), plaintiff can no longer rest on the generalized assertions that are sufficient under the federal system of notice pleading. Here is Rule 56(e)'s unambiguous mandate:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

In this instance Draghi has tried to take an end run around that prohibition by tendering a purported affidavit (his 12(N)

Response Ex. A) that attempts to bootstrap his AC allegations into admissible evidence:

2. Affiant has read his Amended Complaint as filed herein and, to the best of his personal knowledge and belief, the statements of fact made therein are true.

3. If called to testify herein, Plaintiff would competently testify as to the matters within his personal knowledge as set forth in his Amended Complaint.

But we are taught in law school (or we should be) that any statement that things are true "to the best of [someone's] personal knowledge and belief" is really not an affidavit at all—it is wholly ineffective as a sworn statement of the *actual* truthfulness of the assertions referred to.[1] And Draghi's similar bootstrapping assertion in Ex. A ¶ 3 stands in no better stead.

Hence the Ex. A "affidavit" (or, more accurately, nonaffidavit) can and must be disregarded for Rule 56 purposes. And even though Draghi's other submitted affidavit (his 12(N) Response Ex. B) is more detailed in its framing, it fares no better for present purposes. On the issues that are critical to the property and liberty interest questions on which this opinion focuses, here are Ex. B ¶¶ 3, 6 and 7:

3. When, on July 21, 1993, the County of Cook employed Draghi as a physician on the medical staff of Cook County Hospital, Draghi was told, understood, and believed, that he was employed pursuant to a contract, formed by oral offer and acceptance, that was partially written, particularly as to terms and conditions of employment discipline and corrective actions; and that the Bylaws were part of, and qualified and conditioned, the employment contract by and between Draghi and the County of Cook, and conferred rights, privileges, and duties upon each of Draghi and the County of Cook.

6. Draghi never committed any act that endangered the life or safety of a patient entrusted to his care.

7. From the time of commencement of Draghi's appointment to the Medical Staff of Cook County Hospital until the termination thereof, Draghi rendered satisfactory service to Cook County Hospital and to his patients.

Again a consideration of those assertions as potentially admissible evidence sufficient to resist a Rule 56 motion finds them totally wanting for that purpose.

### Claimed Property Interest

■ As Draghi himself acknowledges by his citation of that seminal case, *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) confirms that a property interest in employment (and the identical principle applies to a doctor's clinical privileges at a hospital) must look to "existing rules or understandings that stem from an independent source such as state law." And in that regard, any rules or understandings that do not form part of a documented relationship with the employing entity (or with the hospital extending such clinical privileges) must have been granted by an authorized decisionmaker (see, e.g., *Santella v. City of Chicago,* 936 F.2d 328, 331–32 (7th Cir.1991) and cases cited there).

■ In this instance Draghi's vague statement in Ex. B ¶ 3 is plainly inadequate as an *evidentiary* showing that creates any genuine issue of material fact. No one who would get on the stand at a trial and would proffer the kind of assertion that is contained in that paragraph would be held, over the adversary's objection, to have provided admissible evidence on that score. Nothing in that

---

1. Indeed, there is an additional obvious problem with the further Ex. A ¶ 2 generalized assertion that "statements of fact made therein are true." Because any such assertion also leaves uncertain precisely which things said in the AC are "statements of fact" and which things are not, it too is ineffective as a verification—in the same way that the first part of Ex. A ¶ 2 leaves the reader in the dark as to both how good "the best" of the affiant's personal knowledge is (surely that is something less than the necessary absolute and unqualified statement of fact) and as to how much the affiant is impermissibly relying on his mere "belief." And all of this is so even without having to refer to the substantive content of the AC to see whether the matters set out there, many of which are patently conclusory or skeletal (rather than fact-evidentiary) in nature, are even *capable* of constituting admissible evidence.

fuzzy and imprecise assertion, even with the reasonable favorable inferences that are called for by Rule 56, ascribes to Hospital's authorized decisionmaker or decisionmakers any contractual commitment running to Draghi.

Nor did Draghi's initial "provisional appointment" to Hospital's medical staff under its Bylaws Art. III, § 3b create an employment contract, let alone a property interest in such employment. As *Engelstad v. Virginia Mun. Hosp.*, 718 F.2d 262, 267 (8th Cir.1983) has put it with admirable succinctness:

> Staff privileges do not establish an employment contract with the hospital.

And that applies a fortiori to an appointment, such as Draghi's, that by its own terms was "provisional."

Draghi is also not aided by his self-proclamation (Ex. B ¶ 7) that he provided "satisfactory service" before his staff privileges were terminated, a statement that serves no better to avoid summary judgment here than an employee's similar self-evaluation can stave off summary judgment in a Title VII or ADEA case where his or her employer has found the employee's services less than "satisfactory" (*see, e.g., Sirvidas v. Commonwealth Edison Co.*, 60 F.3d 375, 378 (7th Cir.1995)).

Moreover and even apart from that, as our Court of Appeals has said in *Illinois Psychological Ass'n v. Falk*, 818 F.2d 1337, 1344 (7th Cir.1987):

> We doubt that a contract entitling a doctor or other professional to hospital staff privileges during good behavior should be equated for constitutional purposes to a contract entitling a public school teacher to retain his job during good behavior.

Accord, *Lim v. Central DuPage Hosp.*, 871 F.2d 644, 646 (7th Cir.1989) ("We expressed skepticism in *Falk* that the termination of hospital staff privileges is a deprivation of property, pointing out that, if it were, this would make every contract right a property right"). It is time to convert that skepticism into a firm ruling where, as here, such staff privileges had been the subject of a "provisional appointment" subject to Hospital's de-

termination that the provisional appointee rendered "satisfactory service." This Court therefore holds that Draghi simply had *no* property interest whose deprivation implicated the Due Process Clause.

In sum, the purely procedural provisions on which Draghi is compelled to rely in an effort to boost himself upward into a substantive entitlement do not even approach the conferring of a property interest, either in his employment or in his ability to enjoy Hospital staff privileges. That failure is coupled with the negation of any contract right on Draghi's part, hence compelling the dismissal of his state law breach of contract claim. And if Draghi's remaining Section 1983 claims are to survive, that can take place only in terms of his demonstration of a liberty interest, to which subject this opinion now turns.

### Claimed Liberty Interest

As Opinion at *5 said, any attempted reliance on a deprivation of a liberty interest in an occupation as a predicate for a Section 1983 claim must depend on a showing of "stigma plus," the concept demanded by other seminal cases—*Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)—and by the many cases that have since applied the same principles. Once again Draghi founders on the shoals of that controlling principle.

As to the portion of Draghi's asserted liberty-founded claims that he seeks to base on the termination of his staff privileges, that effort must be rejected in light of the holding of *Illinois Psychological Ass'n*, 818 F.2d at 1344:

> Being a member of a hospital's medical staff is not an occupation; it is a privilege attached to an occupation; the removal of the privilege, without exclusion, formal or practical, from the occupation is therefore not a deprivation of occupational liberty.

And as for Draghi's claims of a loss of liberty stemming from an adverse effect on his ability to practice his profession (the just-quoted "exclusion, formal or practical, from the occupation"), AC Count III points only to de-

fendants' having reported to the National Practitioner Data Bank and to the Illinois Department of Professional Regulation on the termination of Draghi's employment and Hospital privileges. But in that regard this Court need do no more than to repeat what was said in *Fleury v. Clayton,* 664 F.Supp. 1224, 1227 (C.D.Ill.1987) (some citations omitted):

> The physician's conclusion regarding his purported liberty interest is likewise unavailing. While the Court accepts as true Plaintiff's statements concerning his damaged reputation and reduced income, these allegations are insufficient to state a claim under § 1983. Again, no legal barrier to Fleury's medical practice exists. Admittedly, the reprimand may well have made the doctor less attractive to clients, but as the Court stated in *Munson* [*v. Friske,*] 754 F.2d [683,] 693 [(7th Cir.1985)]:
>
>> Liberty is not infringed by a label of incompetence or a failure to meet a specific level of management skills, which would only affect one's professional life and force one down a few notches in the professional hierarchy. A liberty interest is not implicated where the charges merely result in reduced economic returns and diminished prestige, but not permanent exclusion from or protracted interruption of employment.
>
> This Court then must reach the same result as the Supreme Court in *Paul* [, 424 U.S. at 712]: "[T]he interest in reputation asserted in this case is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law."

And *Evers v. Edward Hosp. Ass'n,* 247 Ill. App.3d 717, 733–34, 187 Ill.Dec. 490, 617 N.E.2d 1211, 1224 (2d Dist.1993) similarly holds that a doctor's assertedly greater difficulty in obtaining employment just does not equate for Due Process Clause purposes to his or her actually being foreclosed from the practice of medicine—an opportunity that is available to anyone who continues to hold the requisite licensure, as Draghi does.

In short, the "plus" in "stigma plus" requires a materially different showing than what Draghi has even alleged, let alone his having utterly failed to offer any evidence to support such a showing. Again his contention does not survive scrutiny.

### Conclusion

Until after the issuance of the Opinion, Draghi's counsel had simply theorized about his ability to qualify under the rubric of one or more of the claims that survived issuance of the Opinion in Rule 56 terms. When Draghi was then put to the evidentiary test posed by Rule 56 as to those remaining claims, however, he has fallen short of establishing the existence of any genuine issue of material fact. Accordingly defendants are entitled to a judgment as a matter of law on the remaining aspects of Draghi's AC, and both the AC and this action are dismissed.